## MAYCOCK v. CONTINENTAL LIFE INS. CO. et al.
### No. 5066. Decided March 16, 1932. (9 P. [2d] 179.)

*Wm. A. Hilton,* of Salt Lake City, and *Henderson & Johnson,* of Ogden, for appellants.

*Woolley & Holther,* of Ogden, for respondent.

ELIAS HANSEN, J.

This controversy arose out of a life insurance policy. Oscar Broom Madson died on January 10, 1929. At the

time of his death he carried a life insurance policy in the sum of $5,000 with the defendant Continental Life Insurance Company. The estate of the insured was named as the beneficiary in the policy. Prior to his death Mr. Madson assigned the policy to the plaintiff herein. By virtue of such assignment plaintiff claimed to be entitled to the proceeds of the insurance policy. On August 15, 1929, plaintiff commenced this action in the district court of Weber county, Utah, to recover the money owing upon the policy. The Ogden State Bank, as executor of the last will and testament of Oscar Broom Madson, was made a party defendant in the action because, as alleged in the complaint, it claimed some interest in the proceeds of the insurance policy adverse to the plaintiff. So far as appears, the defendant insurance company was not served with process, but on October 11, 1929, it filed its answer in the cause. The answer of the insurance company admits its liability to pay some one the sum of $5,000. It, however, denied that plaintiff is entitled to the $5,000. The insurance company further alleged in its answer that

"it is without sufficient information or knowledge upon which to form a belief as to the truth of the allegation * * * of plaintiff's complaint * * *; 'that the claim of the defendant Ogden State Bank as such executor is without any right or foundation in law or in equity' and upon that ground this defendant denies that the claim of the Ogden State Bank as such executor is without any right or foundation in law or in equity * * *. This defendant alleges that it has at all times since the receipt by it of proof of the death of said Oscar Broom Madson been willing and ready to pay the proceeds of said policy to the person or persons rightfully entitled thereto; that it is unable to determine which of said claimants, that is the plaintiff, or the defendant, Ogden State Bank, as executor of the last will and testament of the said Oscar Broom Madson, deceased, is entitled to the proceeds of said life insurance policy and that it is ready and willing to deliver the same to such person as this court shall direct."

The Ogden State Bank, as executor of the last will and testament of Oscar Broom Madson, entered its appearance in this cause and filed a demurrer to plaintiff's complaint. The demurrer was overruled and time given to answer. No

answer was filed by the Ogden State Bank and its default was entered because of its failure to answer. On January 16, 1930, the defendant Continental Life Insurance Company paid to the clerk of the district court of Weber county, Utah, the sum of $5,000 to abide the judgment of the court in the cause. On January 17, 1930, the cause came on for trial upon the issues joined by plaintiff's complaint and the answer of the defendant insurance company. At the trial, evidence, oral and documentary, was given on behalf of the plaintiff and the defendant insurance company. The trial court found the issues in favor of the plaintiff and against the defendants. On February 1, 1930, a judgment was entered. The judgment directed the clerk of the court to pay to the plaintiff the $5,000 which had been deposited with him by the defendant insurance company. The plaintiff was also awarded judgment against the insurance company for the sum of $382.20, the same being interest at the rate of 8 per cent per annum from February 2, 1929, to January 16, 1930, and costs in the sum of $13.20. The defendant insurance company alone prosecutes this appeal. The principal complaint urged by the appellant in its brief is that the court erred in awarding judgment against it for interest and costs. Appellant, however, also contends that it should have been awarded its costs, including a reasonable fee for the attorney who represented it at the trial. Appellant also assigned as error that part of the judgment wherein the trial court directed the clerk to forthwith pay to the plaintiff the $5,000 which was deposited with the clerk by the insurance company.

The following additional facts are established by the evidence which is not in conflict: In 1927, Mr. Madson wrote to the defendant insurance company requesting that Miss Rhoda Maycock (the plaintiff) be made the beneficiary in his insurance policy. He explained that Miss Maycock had been a model mother to his boy, and in order to repay her in part for her services, he desired that she be made the beneficiary so that in case of his death she could be paid the $5,000 without the expense and delay that would be

incidental to making her a bequest in his will for that amount. The defendant insurance company in reply to Mr. Madson's letter stated that Miss Maycock could not be made the beneficiary in his policy because she had no insurable interest in his life; that the same results could be accomplished if he (Mr. Madson) would assign the policy to Miss Maycock; and that if he desire to make an assignment of his policy to Miss Maycock the company would send him blank forms of assignment. Later in that year the company furnished the blank forms and Mr. Madson executed an assignment in duplicate of his policy to Miss Maycock. One of the duplicate assignments so executed was retained by the company the other returned to Mr. Madson. The assignment so executed reads as follows:

"For value received, I hereby assign and transfer unto Rhoda Maycock of 940 West Twelfth Street, Ogden, Weber County, Utah, the Policy of Insurance Known as No. 14853, issued by the Continental Life Insurance Company, St. Louis, Mo., upon the life of Oscar Broom Madson, of Ogden, Weber County, Utah, and all benefit and advantage to be had or derived therefrom, as the interest .of the assignee may appear, subject to the conditions of the said policy and to the rules and regulations of the Company, and further subject to any indebtedness against said policy, carried by the Company, which takes priority over this assignment. Said Policy is not now assigned to any other individual, firm, association or corporation.

"Witness my hand and seal, this 3rd day of December, nineteen hundred twenty-eight.

"[Signed] Oscar Broom Madson, Insured<br>"Estate, Beneficiary

"The Continental Life Insurance Company, of St. Louis, Missouri, in accordance with its rules, as stated below, has retained the duplicate of this assignment.

"[Signed] R. M. Donnelly,<br>"Ass't Secretary.

"St. Louis, Dec. 12, 1928.

"Read Instructions Carefully

"The rules of the Company require that assignment of policies issued by it *shall be made in duplicate; that both copies shall be sent to the Home Office, and that one copy shall be retained by the Company and the other returned.*

"The company has no responsibility for the validity of any assignment.

"The acknowledgment must be made before an officer duly authorized to administer oaths and take acknowledgments to deeds of real estate whose official seal should be affixed.

"Form for release is on the back hereof."

Soon after the death of Mr. Madson and on or about February 2, 1929, plaintiff caused to be furnished to the insurance company due proof of Mr. Madson's death and demanded payment to her of the face value of the policy. On February 4, 1929, the Ogden State Bank was appointed executor of the last will and testament of Mr. Madson, and on the same day, letters testamentary were issued to the bank. Thereafter considerable correspondence was had between the insurance company and counsel for the plaintiff. The insurance company was unwilling to pay plaintiff the proceeds of the policy because, as it claimed, the assignment was not absolute but conveyed to plaintiff only such of the proceeds "as the interests of the assignee may appear"; and also because, as it was informed, the Ogden State Bank claimed some interest in the proceeds of the policy. The plaintiff caused to be prepared and sent to the insurance company three affidavits wherein it was averred that Miss Maycock was housekeeper of Mr. Madson for a period of between ten and twenty years and that Mr. Madson on divers occasions prior to making the assignment stated that he intended to assign the whole of the proceeds of his life insurance policy to Rhoda Maycock to compensate and reward her for her long, continued, and faithful service to him. The insurance company wrote to the Ogden State Bank informing it that Miss Maycock was claiming all of the proceeds of the insurance policy and inquired from the bank if it, as executor of the last will and testament of Mr. Madson, claimed any interest in such proceeds. That letter was not answered but was given to the attorney for the bank. The bank's attorney testified that he did not answer the letter because as a legal proposition he did not know whether the bank as executor of Mr. Madson's will did or did not have

a right to the proceeds of the policy. The insurance company informed the plaintiff of the claim made by the bank and of the failure of the bank to answer the letter which was written to it. Finally the insurance company urged the plaintiff to bring an action so that it might determine who was entitled to the proceeds of the policy.

Prior to the time this action was begun, the defendant insurance company apparently acted in the utmost good faith in refusing to pay the proceeds of the policy to the plaintiff because of a likelihood that the Ogden State Bank would claim the fund. Until this action was begun the insurance company had no way of paying the money into court and it could not safely pay it to either the plaintiff or to the Ogden State Bank. The attorneys who represented the defendants, as well as the attorneys who represented the plaintiff, in the correspondence had between the parties looking to an adjustment of who was entitled to the proceeds of the policy, seemed to have been in accord in entertaining doubts as to whether or not the assignment made by Mr. Madson of his policy to Miss Maycock vested in her all of the proceeds of the policy. We have heretofore in this opinion stated the views entertained by the attorney for the Ogden State Bank. In one of the letters written by the attorneys for the plaintiff to the attorneys for the insurance company it was stated: "We fully realize your position and desire to be protected in the matter of the payment of this money to the right party and we are endeavoring to secure a waiver from the bank." So far as appears, plaintiff's attorneys were unable to secure a "waiver from the bank." In justification of its failure to pay the money to the plaintiff, counsel for the insurance company calls our attention to the case of *Barrett* v. *Northwestern Mutual Life Insurance Co.*, 99 Iowa 637, 68 N. W. 906, 907, wherein it is held that an assignment of a life insurance policy using the words "as their interest may appear" is an assignment of a qualified and not an absolute interest in the proceeds of an insurance policy. The defendant insurance company could have brought an action in interpleader as provided

by Comp. Laws Utah 1917, § 6517, and in such action have secured leave of court to pay the money into court and be relieved of liability. Does its failure to bring such an action constitute an unreasonable delay on its part in making payment and does such failure justify a judgment against it for interest? Upon both principle and the authorities the question must be answered in the negative. *Mutual Life Insurance Co., of New York* v. *Rodney et al.*, 12 Del. Ch. 294, 114 A. 163. The court below was in error in awarding plaintiff interest on the $5,000 prior to the time that the defendant insurance company entered its appearance in this cause. Up to that time the insurance company had good reason to fear that it might suffer injuries if it paid the proceeds of the insurance policy to either the plaintiff or to the Ogden State Bank.

An entirely different situation is presented after October 11, 1929, when the insurance company filed its answer in the cause. If the insurance company at the time it entered its appearance had paid the $5,000 into court and asked that plaintiff and defendant bank litigate their claims to the money so paid and had asked to be relieved from liability, it would have been entitled to a discharge from further liability. The insurance company, however, did not pursue that course. On the contrary, its answer denied plaintiff's right to the proceeds of the policy. It resisted the payment of the $5,000 to the plaintiff at the trial even after the defendant bank abandoned its claim to the money. After the trial court orally announced its decision, counsel for the insurance company requested that the $5,000 be not paid to the plaintiff until he could communicate with the insurance company. The request was granted. By one of its assignments of error in this court, the insurance company complains because the court below adjudged that the plaintiff is entitled to the whole of the $5,000 and that the defendant bank has no interest therein. The function of an interpleader is to compel conflicting complainants to litigate their claims among themselves. Since this action was begun the insurance company has not

assumed the role of one not claiming any title or interest in the $5,000, but rather that of a defendant resisting plaintiff's claim to the proceeds of the policy. Appellant having played the part of a defendant in the cause since it entered its appearance, and having failed to defeat plaintiff's claim to the fund in controversy, must abide the result of defeat the same as any other defendant.

The insurance company was entitled to be protected against the conflicting claims of plaintiff and the Ogden State Bank, but it was not concerned with which of the claimants secured the money so long as it was relieved of liability. The unwarranted failure of the insurance company to promptly pay the money into court and withdraw from the litigation made a trial of the issues necessary. The position taken by the insurance company was calculated to prolong the litigation and to deprive the party entitled to the fund from the use thereof. The insurance company owed a duty to the claimants of the fund and especially to the plaintiff to promptly pay the money into court and withdraw from the litigation. The failure of the insurance company to perform such duty precludes it from the recovery of costs and attorney's fee incurred in the trial of this cause and entitles plaintiff to her costs and legal interest on the $5,000 during the time the insurance company wrongfully withheld the proceeds of the policy. The trial court was in error in computing interest from February 2, 1929, to January 16, 1930. Plaintiff is entitled to a judgment against the defendant insurance company for interest at the rate of 8 per cent per annum from October 11, 1929, to February 1, 1930. In all other respects the judgment should be and is affirmed. This cause is remanded to the district court of Weber county, with directions to that court to recast its findings of fact, conclusions of law, and judgment to conform to the views herein expressed. Neither party is awarded any costs on appeal.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.